# Rufus K. Hulett, Admr., et al., Plffs. in Err., *v.* Walter G. Patterson, Exr.

Where the court has instructed the jury that in any event their verdict must be for the defendant, a judgment against him will not be permitted to stand.

A written instrument given in evidence, containing the undoubted genuine signature of a person whose name is alleged to have been forged to another instrument, and the two signatures submitted to the jury for a comparison, is sufficient to justify the submission to the jury of the question of the alleged forgery.

(Argued March 17, 1887.    Decided March 28, 1887.)

January Term, 1887, No. 167, E. D., before MERCUR, Ch. J., GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.    Error to the Common Pleas of Bradford County to review a judgment on a verdict for plaintiff in an action of replevin.    Reversed as to one defendant below; affirmed as to the others.

The facts are fully stated in the charge to the jury given below.

Plaintiff offered in evidence a paper dated May 10, 1883, being a bill of sale of certain personal property from E. C. Hulett and R. K. Hulett to Alice J. Hulett.

Defendants objected to the paper, first, that it not being under seal, and no specific consideration named therein, the plaintiff is required to prove the consideration; second, that as the language of the bill of sale is in the singular, "I hereby assign and set over all my right," etc., and no acknowledgment having been proved by R. K. Hulett, the husband of Effie C. Hulett, the paper has not been sufficiently proved.

Objection overruled.    Bill sealed for defendant.

The paper after enumerating sundry articles under the head of "schedule" proceeded as follows:

For a valuable consideration to me in hand paid I hereby as-

NOTE.—Prior to the act of May 15, 1895, all comparisons of handwriting were made by the jury. By that legislation opinions of persons acquainted with the handwriting of the supposed writer, as well as of experts, were made admissible, the final determination of the question of genuineness remaining with the jury.

sign and set over all my right, title, and interest in and to the above schedule to Alice J. Hulett, May 10, 1883.

E. C. Hulett,
R. K. Hulett.

Personally appeared before the subscriber, a justice of the peace in and for the county of Bradford and state of Pennsylvania, E. C. Hulett, and acknowledged the within signature to be of her own free will and accord without any coercion or compulsion on the part of her said husband.   Wm. Snyder, J. P.

Plaintiff also offered in evidence a paper dated March 22, 1883, as follows:

Ithaca Organ & Piano Company Guaranty.
Ithaca, N. Y., March 22, 1883.

For value received, we hereby guarantee to Alice Hulett an Ithaca organ, Style H, No. 5372, for ten years from date, for any defect in workmanship, material, or performance under fair usage, during the above specified time; for which we hold ourselves responsible.     Ithaca Organ & Piano Company,
J. M. Van Order, Agent, Ithaca.

And further offered to prove that at the time the agent of the Ithaca Organ & Piano Company was at the house of Alice Hulett, he and Alice had a guaranty of the organ which had been previously given to her, of the organ for which they were seeking to get the balance of the pay, for the purpose of showing title in Alice Hulett.

Defendants object, because the paper itself is a guaranty on behalf of the Ithaca Organ Company, and does not recite the fact of any sale to Alice Hulett, nor has plaintiff offered to prove by the witness upon the stand that the company sold the organ in question to Alice Hulett.

Objection overruled.     Paper read in evidence.

Defendants, *inter alia,* presented the following points:

1. The plea of property by R. K. Hulett in his own right and as administrator of the estate of Effie C. Hulett, deceased, imposes on the plaintiff the necessity of establishing title to the property replevied, and the right of exclusive possession of it.

*Ans.* That proposition is affirmed.   The burden is upon the plaintiff to show title to the property, because the defendants

claim the property as theirs; and the burden is upon the plaintiff to show that the property belonged to his wife.

2. If the jury believe from all the evidence in the case that Effie C. Hulett was the owner of the property in question, at the time of the execution of the bill of sale to Alice J. Hulett, her declarations made as to the ownership of said property do not estop her estate, on the ground of coverture, from claiming the property in this suit.

*Ans.* That proposition is affirmed. We say that her declarations made afterwards do not estop her, but are received for the purpose of establishing the fact of a sale on the 10th of May, 1883, of this personal property to Alice.

MORROW, P. J., charged the jury as follows:

This is an action of replevin brought by Walter G. Patterson, executor of Alice J. Patterson, against R. K. Hulett, for himself and as administrator of Effie C. Hulett, his wife, and Gilbert E. Hulett, defendants. The action of replevin is a form of action which authorizes the sheriff to take the property into his possession and deliver it to the plaintiff, after bond given by the plaintiff, unless the defendant claim the property and give a bond satisfactory to the sheriff; and then the law makes it the duty of the sheriff to leave the property in the hands of the defendant.

[In the present case the defendants claimed the property, gave a bond to the sheriff, and the sheriff left the property with them, making a statement in his return of what property he turned over to the defendants. Therefore, if the plaintiff recovers in this case, he is entitled to recover the value of the property, and any damages occasioned to him by reason of its detention by the defendants. The effect of such a verdict is to leave the property with the defendants; and your verdict giving the value of the property to the plaintiff would operate as a conveyance of the title to that property to the defendants.]

If there is any property which the sheriff turned over to the defendants that you find did not belong to the plaintiff, you will make a list of that property, and say in your verdict that as to such items you find for the defendants. [That is, if there is any property to which the plaintiff has not established his title, as to such items of property you will find for the defendants; but if there is any property to which the plaintiff has established a

good title, and which was delivered by the sheriff to the defendants, then you will find for the plaintiff the value of such property, leaving the property itself still in the hands of the defendants. The sheriff's return shows that he found none of this property in the possession of Gilbert E. Hulett, nor did he deliver any of it to Gilbert E. Hulett, but he delivered it to R. K. Hulett and Mrs. Hulett, so that in any event your verdict must be for the defendant, Gilbert E. Hulett. That leaves the issue between the plaintiff and R. K. Hulett.]

The undisputed evidence shows that Alice J. Patterson was the daughter of R. K. Hulett and Effie C. Hulett; that she was married to Walter G. Patterson on the 26th day of March, 1884, and died on the 21st day of March, 1885. Her will was proved on the 8th of April, 1885, and on the 11th of April letters testamentary were granted to her husband, who was named in her will as her executor. She left a child which was born some weeks before her death, and which is still living.

On the 10th of May, 1883, R. K. Hulett and wife conveyed to their daughter, Alice J. Hulett, the farm, consisting of about 78 acres. The deed was acknowledged the same day, and recorded on the 14th of the same month; so that so far as the papers show, on their face, an absolute title to that land was by that deed vested in Alice. She lived with her parents upon the farm till she was married, and after that both she and her husband lived there till the time of her death. This action was brought by Walter G. Patterson on the 14th of April, 1885, and in it he seeks to recover the value of certain personal property which he alleges belonged to his wife, Alice J. Patterson, and which she left upon that place at the time of her death. That is one of the first questions for the jury to determine in this case, because an action of replevin cannot be maintained for property unless the plaintiff was the owner of the property and had a right to the immediate and exclusive possession of it.

[The plaintiff has given in evidence a paper dated May 10, 1883, signed by R. K. Hulett and his wife, and acknowledged about October, 1884, according to the testimony of William Snyder, in which Hulett and his wife say that for a valuable consideration they have sold and delivered a certain amount of personal property to Alice, and also a paper signed by Mrs. Hulett, in which she undertook to transfer to Alice, her daughter, her household furniture.]

Mrs. Hulett being a married woman, and the paper not being acknowledged by anything more than the simple signing of it, she would not be bound by it. But she would be bound by a verbal, or parol, contract, selling and conveying to her daughter her personal property, and nobody could complain except her creditors; so that if you find from the evidence that Alice received, for a valuable consideration, the property sued for in this suit, and that she lived there and took such possession of it as she could under the circumstances, and had a right to the exclusive possession of it, then the plaintiff would be entitled to recover in this action, unless there is something more in the case, showing that she sold back the property, or made a different arrangement about it.

On the part of the defense it is claimed that Alice J. Hulett had no means with which to pay for this large amount of property, and that in fact she never paid anything for it. You have heard the testimony of the witnesses called on the part of the plaintiff, as to certain declarations made by R. K. Hulett and his wife, that they had nothing, but that all the property there belonged to Alice. While it is not claimed by the plaintiff that these declarations, if made, would estop the present defendants from showing that Alice did not own the property, yet it is claimed that they are corroborative of the fact of the agreement contained in the paper dated May 10, 1883. On the other hand, the defendants have given in evidence certain declarations claimed to have been made by Alice, to the effect that she was not to have this property unless she made certain payments.

[They have also given in evidence a paper purporting to be signed by Alice, and witnessed by one L. L. Horton, to the effect that the property was to be hers only on the condition that she paid $1,000 as specified therein, $100 to be paid by the first of December, 1883. Both of these papers are dated May 10, 1883. In one paper they make a schedule, stating that for a valuable consideration they have conveyed certain property to Alice, and, the same day, it is claimed, she gave back this paper, in the presence of another witness, stating that she was not to have it unless she paid $1,000, as before stated. On the part of the plaintiff it is claimed and alleged that this paper is a forgery; and, as bearing upon this question, they claim that it would have been as easy to have included the substance of this paper in the other, as to have made two different papers to ex-

press the contract. They claim that the paper witnessed by Horton is of recent date, that this is shown by the appearance of the paper and the ink, and that the signature of Alice Hulett is forced and cramped, and an imitation, and not genuine. The paper has been admitted in evidence; you have heard the evidence and the arguments of counsel concerning it, and it will be for you to determine, under all the evidence in the case bearing upon the subject, whether it is genuine or not.]

On the one hand, witnesses have been called to testify that R. K. Hulett and his wife declared repeatedly, and as late as October, 1884, if not later, that they owned nothing, but that it all belonged to Alice. And on the other hand witnesses have been called by the defendants who testify to certain declarations of Alice, to the effect that she had this property under certain conditions. [It is evident that there must have been crookedness and lying somewhere, and it is for you to determine where it is.]

The defendants have also given in evidence a paper drawn by Silas Carmer, signed by Alice Hulett, and witnessed by Miss Jennie Seely, now Mrs. Hanlon. Carmer says that he drew that paper on Sunday evening, March 23, 1884, and that he dated it March 24, 1884. He says that he had previously talked with R. K. Hulett and his wife, and with Alice, about the property, and that he drew this paper in accordance with an agreement between the three. He says that Alice came for the paper and at that time talked about the personal property, that he afterwards met her in Athens, and, at her request, and before the paper was executed, he interlined the words "personal property," and also the condition as to her leaving a child, or children. Mrs. Hanlon testifies that she signed this paper as a witness, at Alice's request, and that these interlineations were not there at the time she witnessed it. She is also very positive in her testimony that she signed this paper in December, 1883, and not in March, 1884; and you have heard her testimony as to how she fixes the date. She also says that she declined to sign the paper until she was urged to do so by Mrs. Hulett, and that she read it over carefully before signing it, so that she is very positive in her testimony as to the absence of these interlineations at that time.

[So far as these papers are concerned, if you find that the paper witnessed by Horton is a forgery, then, of course, it can have no effect in this case. And if you find that the words relating to

the personal property were interlined in this agreement after it was executed, then these words can have no effect whatever upon this case; and this is one of the most important questions in this case. If these writings are genuine, and if the contract was that Alice was not to have the title to this property until she paid $1,000, and if she did not pay it, then there can be no recovery by the plaintiff in this case. The evidence is all before you, and it has been fully argued by counsel, and from it you will have to decide these questions. If you should find from all the evidence, the appearance of the paper, and the circumstances, that this paper witnessed by Horton is a forgery, and that the defendants have undertaken to set up a false defense in this case, then it will be for you to say how much, if any, dependence you can put in any defense which they have made.] And so in regard to the paper dated March 24, 1884. If it has been fraudulently altered in this material respect, of course it can have no effect so far as the personal property is concerned, and it would also be proper for you to consider how far the attempt to offer such fraudulent evidence would bear upon the question of the honesty and good faith of this defense.

In regard to the timber Carmer testifies in substance that the same season (after the deed was made from R. K. Hulett and his wife to Alice) Alice and her father and mother were at his house, and that it was there talked and understood that her father was to have all the timber, to cut and take off and do with as he pleased, notwithstanding the deed to Alice. Under the defendants' offer to show that he was to go on and take this timber off, we admitted this evidence, but the evidence given does not come up to the offer; because timber is real estate, and an agreement as testified to here would not bind her. A verbal agreement of that kind would not be even a license, unless she permitted him to go on and take off the timber, and he actually did so. Carmer says that the talk about the timber was two months after the deed to Alice, and that King was to have the privilege of going on and taking off the timber. Now if he did so under that license it was his, and there could be no recovery for it by the plaintiff in this case. But unless he did so this evidence goes for nothing.

The evidence shows that Alice made a contract with Brown & Wolfe to go on and cut the timber, that they did so, and that Alice paid $140 on the saw bill. Now, the land being Alice's, if

she went on and took off this timber, notwithstanding the agreement with her father, it was hers; but if she permitted her father to go on and take it off, and he actually did so, then it would be his. In regard to the clothing of Mrs. Patterson, that was a personal matter, and it belonged to her, no matter whether she bought it herself, or whether it was furnished her by others.

It is claimed on the part of the defense that after the writ was served and the clothing turned over to R. K. Hulett, he returned it to Mr. Patterson. If he did return it all, that is an end of the matter. If he did not return it all, then the plaintiff is entitled to recover the value of such as he did not return, and also nominal damages for the detention of such as he did return, say five or ten cents, or some other small sum for the few days which it was detained.

The jury returned a verdict for the plaintiff for $1,743.45, and judgment was entered thereon in favor of plaintiff against all the defendants. The court subsequently refused the motion by counsel for Gilbert E. Hulett, one of the defendants, to strike off the judgment as to him and discharge him as one of the defendants.

The assignments of error specified the admission of the evidence above set out, the answers to the defendants' points, the portions of the charge inclosed in brackets, and the action of the court in refusing the motion to strike off the judgment as to Gilbert E. Hulett and discharge him as one of the defendants.

*Rodney A. Mercur,* for plaintiffs in error.—The admission of the bill of sale was error. The consideration was not proved. It was not under seal, and therefore was a simple contract. There was no presumption of consideration which was necessary to support it. The words "for a valuable consideration" therein do not make a prima facie case of consideration. A receipt for the purchase money indorsed on a deed is only prima facie evidence. Weigley v. Weir, 7 Serg. & R. 309; Jack v. Dougherty, 3 Watts, 159.

To maintain an action on a simple contract the plaintiff must prove the consideration. Conmey v. Macfarlane, 97 Pa. 364.

A host of authorities from White v. Weeks, 1 Penr. & W. 486, to Taylor v. Preston, 79 Pa. 436, hold that where no consideration is expressed parol evidence is admissible to show that one did pass from the grantor to the grantee, and likewise what ap-

pears to be a valuable consideration to prove by parol to be a gift for a good consideration. Lewis v. Brewster, 57 Pa. 410.

No attempt was made to prove any consideration valuable or good.

The offer should have been rejected on the objections raised. .

The admission of the Ithaca Organ & Piano Company's guaranty, offered for the purpose of showing title in Alice Hulett to the organ mentioned in the writ, was error. An inspection of the paper itself plainly shows it to be a guaranty, what it purports to be, and not a bill of sale. No attempt was made by plaintiff below to identify the organ mentioned in the writ with the one mentioned by style and number in the guaranty.

The court was plainly in error when it said in its charge :: "The plaintiff has given in evidence . . . also a paper signed by Mrs. Hulett, in which she undertook to transfer to Alice, her daughter, her household furniture."

No such paper was offered in evidence.

To submit a fact destitute of evidence as one that may nevertheless be found is an encouragement to err which cannot be too closely observed or unsparingly corrected. Stouffer v. Latshaw, 2 Watts, 165, 27 Am. Dec. 297; Whitehill v. Wilson, 3 Penr. & W. 405, 24 Am. Dec. 326; Newbaker v. Alricks, 5 Watts, 183; Sartwell v. Wilcox, 20 Pa. 117.

If the court misled the jury by directing their attention to a point on which there was no evidence, it is error. Snyder v. Wilt, 15 Pa. 59.

If the court assume a fact which is not in evidence, the judgment must be reversed. Musselman v. East Brandywine & W. R. Co. 2 W. N. C. 105.

It is error for the court to assume facts which the testimony does not justify. Egbert v. Payne, 99 Pa. 244.

The discredit cast by the court below on the paper witnessed by Horton, intimating in substance it was a forgery, was wholly unwarranted by anything that appears in the record, and was calculated to invite the jury to an inquiry in which their only guide was vague suspicion or conjecture.

It was error to submit to the jury the question whether the paper witnessed by Horton was a forgery, as there was no evidence introduced to show it was a forgery. Morton v. Weaver, 99 Pa. 47; Camden & A R. Co. v. Hoosey, 99 Pa. 499, 44 Am. Rep. 120; First Nat. Bank v. First Nat. Bank, 18 W. N. C. 457.

The charge of the court that: "It is evident that there must have been crookedness and lying somewhere, and it is for you to determine where it is," was plainly erroneous in inviting the jury to an inquiry in which their only guide was suspicion or conjecture.

A tendency to mislead in the general tenor of the charge, although no particular portion of it is clearly erroneous, is sufficient ground for reversal. Washington Mut. F. Ins. Co. v. Rosenberger, 3 W. N. C. 16; Pennsylvania Canal Co. v. Harris, 101 Pa. 92.

If from the language of a judge, either through ambiguity or want of perspicuity, there is good reason to believe the jury have been misled, the supreme court will reverse. Lackawanna & B. R. Co. v. Chenewith, 52 Pa. 387, 91 Am. Dec. 168.

Where the charge as a whole tends to mislead the jury it is error. Reeves v. Delaware, L. & W. R. Co. 30 Pa. 454, 72 Am. Dec. 713; Philadelphia & R. R. Co. v. Spearen, 47 Pa. 303, 86 Am. Dec. 544; Wenger v. Barnhart, 55 Pa. 310, and Gregg Twp. v. Jamison, 55 Pa. 468; Pennsylvania R. Co. v. Berry, 68 Pa. 272; Stall v. Meek, 70 Pa. 181; Pennsylvania Canal Co. v. Manning, 87 Pa. 240; Bisbing v. Third Nat. Bank, 93 Pa. 79, 39 Am. Rep. 726; Leibig v. Steiner, 94 Pa. 472; Fawcett v. Fawcett, 95 Pa. 376.

The action of the court in refusing to strike off the judgment as to Gilbert E. Hulett and discharge him as one of the defendants was plainly erroneous.

Gilbert E. Hulett claimed none of the property; by his plea of *non cepit* he admitted the property to be in the plaintiff. Mackinley v. McGregor, 3 Whart. 369, 31 Am. Dec. 522; Buckley v. Handy, 2 Miles (Pa.) 449.

By becoming surety on a property bond he did not make himself liable to the plaintiff as a defendant in the replevin suit. The bond was not given to the plaintiff, but to the sheriff; the condition was not that it should be void in case the plaintiff failed to recover judgment, but in case the defendant, who claimed to own the property, should appear to said action, make good her claim, and indemnify the sheriff in the premises. Chaffee v. Sangston, 10 Watts, 265.

The giving of a property bond turns the plaintiff's right into a chose in action. Fisher v. Whollery, 25 Pa. 197.

A claim property bond is security for the damages which may be recovered. Bain v. Lyle, 68 Pa. 64.

The plaintiff could not be prejudiced by striking off the judgment as to Gilbert E. Hulett and discharging him as one of the defendants; for if it had been allowed, the sureties on the property bond would not have been released. Jamieson v. Capron, 95 Pa. 15; Bradford v. Frederick, 101 Pa. 445; Hackett v. Carnell, 106 Pa. 291.

*E. Overton, Jr.,* and *John F. Sanderson,* for defendant in error.—Did Gilbert Hulett, by taking a delivery of this property from the sheriff and giving the bond as aforesaid, make himself liable for the property? If he did not, this error can be corrected now by ordering the judgment against him stricken off; but the judgment against the other defendants should not be disturbed.

PER CURIAM:

The court having instructed the jury that in any event their verdict must be for the defendant, Gilbert E. Hulett, it was clear error to permit the judgment to stand against him. As to the other defendants below, we think there was sufficient evidence to submit to the jury.

We cannot say there was no evidence of the alleged forgery. One written instrument given in evidence contained the undoubted genuine signature of the person whose name was alleged to be forged to the other instrument. It will be presumed that the two signatures were submitted to the jury for comparison. The learned judge in his charge called the attention of the jury to the appearance of the paper and the ink, and that the alleged signature was forced and cramped as an imitation, and not genuine; but as to whether it was genuine he left to the jury to determine.

Judgment against Gilbert E. Hulett reversed; as to the other defendants below, judgment affirmed.